[No. 1486. Decided November 8, 1894.]

ROBERT MURRAY, *Respondent*, v. FRED H. GUSE ET AL., *Appellants*, D. SCHILLING ET AL., *Defendants*.

CHATTEL MORTGAGES—PRIORITIES—LIEN FOR CARE OF LIVE STOCK —ERROR AS TO PARTIES NOT JOINING IN APPEAL—WHEN MAY BE URGED.

Where a horse trainer entitled to a lien upon a horse for the training and care of it, under § 1705, Gen. Stat., accepts a bill of sale or chattel mortgage thereon, he loses priority over a bona fide

mortgagee whose lien accrued subsequent to the rendition of the services entitling the trainer to his statutory lien.

The fact that judgment is taken against a defendant before the expiration of the time allowed by law for his answer to the complaint, although no appeal is prosecuted therefrom by such defendant, may be urged as ground of error on appeal by another defendant, when plaintiff's right to judgment against the appellant is based upon his right to judgment against the defendant who has not had full opportunity to answer.

*Appeal from Superior Court, Spokane County.*

*A. G. Avery*, for appellants.

*Lucius G. Nash* (*Nash & Nash*, of counsel), for respondent.

The opinion of the court was delivered by

DUNBAR, C. J.—The defendant, D. Schilling, on the 8th day of February, 1894, commenced an action in the Superior Court of Spokane County, under the statute of claim and delivery of personal property, seeking the possession and recovery of a horse named Demonstrator, from respondent. On the 17th day of February following, appellants Guse and Pugh, as sheriff, under section 1650 of the General Statutes, commenced an action to foreclose an alleged mortgage on the horse. On the 21st of February, respondent Murray served a complaint on the appellants, Hinkle, Guse and Pugh, and the defendant Schilling, praying for an injunction preventing the sale of the horse by appellant Hinkle, and asking the court, among other things, to establish his claim for work and labor as a professional horse trainer and driver, as a lien on the horse, superior to the claims of any of these appellants; alleging interest in Guse, Hinkle and Schilling. A temporary restraining order was issued on the 22d of February. On the 26th day of February, these appellants were ordered to show cause why respondent's injunction should not be made perpetual. On the 28th day of February, appellants Guse, Hinkle and Pugh answered respond-

ent's complaint, and on the 1st day of March following, respondent replied to their answer.

These several pleadings present an issue of whether or not respondent has a prior lien on the horse Demonstrator, defendants Hinkle and Guse alleging that they are genuine mortgagees of the defendant's horse. The testimony in this case shows that respondent Murray was working for Schilling for wages, his business being to train and care for horses, among others the horse Demonstrator. This employment commenced in May, 1893. Some time in August, Schilling sent the horse Demonstrator to Oregon on a trotting circuit, Schilling accompanying the respondent, as he says in his testimony, "superintending the business." Some time in August Schilling executed to Murray a bill of sale of the horse for a consideration of seven hundred and some odd dollars; Murray testifies to secure the payment of what was then due him; Schilling testifies to prevent the levy of an attachment on the horse Demonstrator by other creditors. After the return of Murray and the horse to Spokane, viz: on November 17, 1893, Murray surrendered his bill of sale and security to Schilling, and Schilling gave him an absolute bill of sale for an undivided one-fourth of said horse Demonstrator. Neither of said bills of sale was ever recorded. Prior to the execution of either of the bills of sale to Murray, on July 3, 1893, Schilling gave a chattel mortgage to defendant Hinkle on Demonstrator, with other property, to secure the payment of $315 borrowed money; which mortgage was not recorded until the 7th day of November, 1893. On that day Schilling also executed and delivered to defendant Guse a mortgage on the horse Demonstrator and other property, to secure the payment of $815; which mortgage was duly recorded in the auditor's office of said county on the same day. Neither of said mortgagees knew plaintiff or was aware that he had any claim on the horse. On February 17th defendant Hinkle placed his mortgage in the hands of defendant Pugh, who is sheriff of said Spokane County, and he took possession of said horse for the purpose of foreclosing said mortgage and

selling said horse and other property, in the statutory manner, and he was restrained as we have before indicated.

The court found that the plaintiff had a lien on the entire horse for $311, under § 1705 of the General Statutes, and gave his judgment for that amount against defendant Schilling; that defendants Guse and Hinkle had respectively good and valid mortgages on said horse, but that they were subsequent and subject to plaintiff's said lien; and from this judgment appeal is taken.

There is some little conflict in the testimony, but we think it is not material and that the testimony substantially shows that respondent Murray never had possession of this horse until after appellant's respective bills of sale had been executed and recorded. It is true that the horse was sometimes entered in the name of Murray; that Murray had the key to the barn; that he drove the horse, and took charge of him; but this is no indication whatever of ownership, as it must of necessity occur that the trainer has control and actual possession of the horse during the time he is training him for a race, or even taking care of him under ordinary circumstances. But this does not by any means carry with it any legal possession in the sense of preventing the rights of other persons from attaching under chattel mortgages or bills of sale. The testimony shows in this case that while respondent was working with the horse, defendant Schilling was furnishing feed for him, paying the salary of an assistant, and was in every way responsible for the horse. It appears, to be sure, that Murray sometimes paid bills on the horse, but when he did so, we think it was plainly understood that Schilling owed him for the same; in fact, in his accounts against Schilling he takes credit for all these expenditures. On receiving the bill of sale in Oregon, in August, according to his own statement he waived any lien he might have for services as a trainer or otherwise on the horse, accepting the security of the bill of sale.

The same thing may be said of his action on the 17th day of November, when he yielded up the bill of sale that he had received in Oregon, and took a one-fourth interest in the

horse Demonstrator as security for his debt.  Having thus waived his right of lien, if he had any under the statute, and accepted in lieu thereof the bill of sale for a one-fourth interest, he accepted it of course as any other purchaser would, subject to all the liens that there were at the time against the property; and it is so plainly evident from the undisputed testimony that a lien in favor of defendants Hinkle and Guse was already in existence, that we are unable to understand on what theory the lower court concluded that the lien of respondent was prior to the lien of the appellants Hinkle and Guse.

It appears from the record in this case that at the time the case was tried it was not properly at issue so far as defendant Schilling was concerned, the time for answering not having expired, only sixteen days having elapsed between the date·of service and the date of the trial; and it is urged by the appellants that no proper judgment could be rendered against defendant Schilling.   The respondent, on the other hand, contends that inasmuch as defendant Schilling did not appeal to this court, the judgment against him stands unquestioned, and that it does not lie in the mouth of the appellants here to question the validity of that judgment. This would undoubtedly be true if the judgment against Schilling did not affect the interests of the appellants, but under the peculiar circumstances of this case any judgment that could be obtained against appellants would necessarily be based upon his right to recover against defendant Schilling, for it is undisputed under the testimony that these appellants had liens on this horse Demonstrator, and if it should have eventuated at the trial that the respondent had no claim against Schilling, or that Schilling was not indebted to the respondent in any way, it would naturally follow that appellants' liens would be decreed to be the first and best liens; and the only basis for this injunction against appellants is the debt owing by Schilling to the respondent.  That debt could not be determined or judicially declared in the shape of a judgment until the defendant Schilling had had an opportunity to answer to respondent Murray's claim in

the manner provided by law.  Not having had such oppor-
tunity the judgment was not legally rendered and the ap-
pellants in this case should not have their interests subjected
to the rights of respondent under an illegal judgment.

In consideration of this error on the part of the court and
of the undisputed facts with reference to the priority of the
liens, the judgment must be reversed and the cause remanded
with instructions to dissolve the injunction and dismiss the
case.

HOYT, SCOTT and STILES, JJ., concur.